# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IRBY et al.<br><br>v.<br><br>XHENG et al. | CIVIL ACTION<br><br>NO. 18-148 |

## MEMORANDUM

**Baylson, J.**　　　　　　　　　　　　　　　　　　　　　　　　**December 16, 2019**

## I.　INTRODUCTION

Plaintiffs Ninia Davis and Charles Irby (the "Parent Plaintiffs"), as well as their children, Plaintiffs Amina Irby, Saeedah Irby, and Rabiyyah Irby, bring this negligence action against Defendants Katherine Xheng and YuPing Xheng, seeking damages for a fire started in the house Plaintiffs rented from Defendants. Plaintiffs' Complaint alleges a single count of negligence. (Compl. ¶¶ 17-23.) Before this Court is Defendant Katherine Xheng's ("Moving Defendant") Motion for Summary Judgment. For the reasons stated below, the motion will be denied.

## II.　FACTUAL AND PROCEDURAL HISTORY

Plaintiffs rented a home from Defendants at 1742 Cleveland Street. (Davis Dep. 6:21-24, 11:4-6, Feb. 28, 2019, Def.'s Mot. for Summ. J. ("MSJ") Ex. L.) The house had a heater in the basement that ran hot—when Plaintiffs would set the heater to 70 degrees, it would heat the house to approximately 100 degrees. (Davis Dep. 44:22-45:2; Irby Dep. 39:3-40:3, Feb. 28, 2019, Def.'s MSJ Ex. M.) A Philadelphia Gas Works technician told the Parent Plaintiffs that the heater was not installed properly, and its piping was not properly configured. (Davis Dep. 64:14-65:6; Irby Dep. 56:21-57:15.)

1

The Parent Plaintiffs complained about the malfunctioning heater to the property manager, Panphil Realty, on numerous occasions. (Davis Dep. 45:2-47:6; Irby Dep. 46:8-47:22.) A repairman was dispatched, and he installed a thermostat on the first floor by the front door. (Davis Dep. 48:11-49:7; Irby Dep. 47:23-49:10.) A wire ran from the thermostat, through the wall, and to a relay underneath the floor. A wire then went from the relay, over a partition in the basement, and to the heater. (Davis Dep. 66:1-14.) The thermostat did not, however, solve the overheating problem. (Davis Dep. 49:8-14; Irby Dep. 49:25-50:13.)

On the morning of January 15, 2016, a fire started at the Cleveland Street residence. (Irby Dep. 13:17-20.) Plaintiff Ninia Davis was sleeping in the upstairs bedroom when she was awoken by people yelling nearby. Plaintiff Davis smelled smoke as she was jolted from her sleep, which prompted her to jump out of bed and run out of the bedroom. (Davis Dep. 36:18-23.) As Plaintiff Davis ran downstairs and out of the house, she saw the living room filled with smoke. (Davis Dep. 37:10-13, 40:7-12.)

Meanwhile Plaintiff Charles Irby was upstairs taking a shower. (Irby Dep. 13:21-14:2.) After he finished, Plaintiff Irby heard his daughter-in-law, Ranesha Crews, run into the house frantically yelling about smoke in the living room. (Irby Dep. 14:2-14.) Irby looked downstairs, but there was too much smoke to see Crews. (Irby Dep. 14:16-21.) Plaintiff Irby ran out of the house, grabbing his belongings on the way out. (Irby Dep. 15:11-16:20.) As Plaintiff Charles Irby left, his daughter, Plaintiff Saeedah Irby, was inside and helped him take things out of the house.

(Irby Dep. 21:18-22:9.) Once outside, Plaintiff Charles Irby reunited with the rest of his family. (Irby Dep. 22:13-23:6.)[1]

Firefighters responded to a 9-1-1 call made by Plaintiff Ninia Davis. (Davis Dep. 57:12-18; Irby Dep. 23:24-24:5.) Once the firefighters were inside the house, Plaintiff Davis saw them try to open the walls in search of an electrical wire. (Davis Dep. 69:18-23.) After the firefighters penetrated the walls, Davis saw smoke pass through the front window on the first floor. When the firefighters penetrated further into the walls, Davis saw even more smoke come from the walls. (Davis Dep: 70:12-19.) Similarly, Plaintiff Charles Irby saw flames coming out of the front window where the thermostat was installed. (Irby Dep. 25:17-26:5.) People watching from outside also saw fire coming out of the wall by the thermostat. (Davis Dep. 70:6-10.)

The fire department filed a report, which stated that the fire was "hidden," started in the "common room, den, family room, living room," and was confined to the interior walls. The report concluded, however, that the cause of the fire was "undetermined." (Pl.'s Opp. Ex. C.) Moving Defendant also produced a report from a private entity that noted that there were four smokers in the house, but also could not determine the cause of the fire. (Def.'s MSJ Ex. J.)

The fire made the Cleveland Street residence uninhabitable, and Plaintiffs had to stay at a shelter for several months. (Davis Dep. 22:5-9, 58:8-14.) At some point, however, Plaintiff Charles Irby returned to the house. In the basement, he saw that the heater relay was burnt out and the wood surrounding it was discolored from the fire. (Irby Dep. 65:14-18, 67:12-19.) Plaintiff

---

[1] The Parent Plaintiffs disagree about which, if any, of their children were home when the fire started. Plaintiff Davis recalls taking the children to school, (Davis Dep. 36:11-18), while Plaintiff Irby remembers all three of his daughters being at home, (Irby Dep. 22:10-15.) Drawing all inferences in favor of Plaintiffs as the nonmoving party, the Court presumes that Plaintiffs Amina Irby, Saeedah Irby, and Rabiyyah Irby were at home at the time of the fire. See In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015) (requiring Courts to view the record "in the light most favorable to the nonmovant, drawing reasonable inferences in its favor").

Irby later returned with an electrician friend named "Chris." Chris told him that the relay caused the fire. (Irby Dep. 69:10-25; 71:19-73:14.)

Within days of the fire, Plaintiff Ninia Davis went to the hospital and was diagnosed with bronchitis and smoke inhalation. (Davis Dep. 14:20-24; Def.'s MSJ Ex. H at A-36.) Plaintiff Davis also testified that Plaintiff Saeedah Irby was stressed and depressed after the fire, and tried to hurt herself. (Davis Dep. 31:11-13.) Over a year later, Saeedah was diagnosed with a depressive disorder and a reaction to severe stress. (Def.'s Ex. H at A-53, A-62.)

The Parent Plaintiffs lost numerous personal items as a result of the fire, including furniture and appliances. (Irby Dep. 28:22-30:18.) All Plaintiffs lost clothes. (Davis Dep. 61:21-62:17.) The Red Cross gave Plaintiffs $1,250, but that did not cover all their losses. (Davis Dep. 68:21-69:4; Def.'s MSJ Ex. H at A-23.) Plaintiff Davis also had to miss three days of work, for which she was not paid. (Davis Dep. 35:5-11.)

Plaintiffs filed a complaint against Defendants alleging negligence. (ECF 3.) Moving Defendant filed a Motion for Summary Judgment. (ECF 32.) Plaintiffs filed a response, (ECF 50), and Moving Defendant filed a reply, (ECF 53.) Moving Defendant later filed a statement of undisputed facts, (ECF 64), and Plaintiffs responded, (ECF 66.)

### III. LEGAL STANDARD

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary

judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. FED. R. CIV. P. 56(c).

## IV. PARTIES' CONTENTIONS

### A. Moving Defendant's Arguments

Moving Defendant contends that summary judgment should be entered on Plaintiffs' negligence claim because there is no evidence that Defendants had notice that the heater was malfunctioning. Moving Defendant also argues that Plaintiffs cannot survive summary judgment because they have not submitted evidence that shows that the heater caused the fire. Moving Defendant asserts that because Plaintiffs have not produced an expert report, Plaintiffs' theory of causation is based only on speculation or conjecture. Moving Defendant also contends that

Plaintiffs have not shown any damages caused by the fire because there is no evidence of a causal connection between the fire and the damages Plaintiffs have alleged.

### B. Plaintiffs' Arguments

Plaintiffs argue that Defendants knew that the heater was malfunctioning because the Parent Plaintiffs told Defendants' property manager, Panphil Realty, about their issues with the heater. As to Plaintiffs' causation argument, Plaintiffs assert that the evidence shows that fire emanated from within the walls near where the heater's relay was located, and thus a reasonable jury could infer that the fire started because of the malfunctioning heater.

## V. DISCUSSION

"In Pennsylvania, it is well settled that landlords owe a duty to protect tenants from injury or loss arising out of a negligent failure to maintain a rental property in a safe condition." Echeverria v. Holley, 142 A.3d 29, 34 (Pa. Super. 2016) (citing Feld v. Merriam, 485 A.2d 742, 745 (Pa. 1984)). "In terms of ordinary negligence . . . the basic elements of that cause of action, including the existence of a duty, a breach thereof, a causal connection between the breach and the injury, and actual loss, apply in landlord tenant disputes." Id. at 35 (citing Keck v. Doughman, 572 A.2d 724, 727 (Pa. Super. 1990)).

Typically, a plaintiff need not give a defendant notice of a dangerous condition on the property to prevail on a claim of negligence. Id. But even assuming that notice was required here, the Parent Plaintiffs' testimony that they complained to Defendants' agent, Panphil Realty, about the malfunctioning heater, at a minimum, creates a genuine issue of fact concerning whether Defendants had notice of the property's dangerous condition. (Davis Dep. 45:2-47:6; Irby Dep. 46:8-47:22.)

As to the cause of the fire, Plaintiffs have submitted enough evidence from which a reasonable jury could conclude that the malfunctioning heater caused the fire. There are two reasonable inferences that could support this conclusion. First, a reasonable jury could infer that the fire emanated from inside the property's walls near the thermostat. The Parent Plaintiffs testified that they saw the firefighters penetrate that wall, which resulted in an excessive amount of smoke and fire passing through the front window. (Davis Dep: 69:18-23, 70:12-19; Irby Dep. 25:17-26:5.) In addition, observers saw fire coming from the wall that housed the thermostat. (Davis Dep. 70:6-10.)

Second, a reasonable jury could infer that the fire started because of the relay that connected the heater to the thermostat. After the fire subsided, Plaintiff Charles Irby went downstairs and noticed that the relay had burned out and the wood surrounding the relay was burnt. (Irby Dep. 65:14-18, 67:12-19.) Taken together, these two inferences would allow a reasonable jury to conclude that the malfunctioning heater started the fire.

Plaintiffs have also submitted enough evidence that they sustained damages as a result of the fire to survive summary judgment. In addition to the evidence about Plaintiff Ninia Davis's bronchitis and Plaintiff Saeedah Irby's depression, there is evidence that each Plaintiff suffered damage to their personal property because of the fire. (Irby Dep. 28:22-30:18; Davis Dep. 61:21-62:17.) A reasonable jury could thus conclude that Plaintiffs suffered damages as a result of the fire.

## VI. CONCLUSION

For all these reasons, Defendant Katherine Xheng's Motion for Summary Judgment will be denied. An appropriate Order follows.

O:\CIVIL 18\18-148 Irby v. Xheng\18cv148 - Memo re MSJ 12162019.docx