IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| IRBY et al., Plaintiffs v. Xheng et al., Defendants | CIVIL ACTION NO. 18-148 |
|---|---|

**Baylson, J.** January 5, 2021

**MEMORANDUM RE: DEFENDANT PANPHIL'S MOTION FOR SUMMARY JUDGMENT**

### I.  Introduction

Plaintiffs Ninia Davis and her children, Plaintiffs Amina Irby, Saeedah Irby, and Rabiyyah Irby,[1] bring this negligence action against Defendants Katherine Xheng and YuPing Xheng ("owners"), seeking damages for a fire that started in the house Plaintiffs rented from Defendants. Plaintiffs' Complaint alleges a single count of negligence. (Compl. ¶¶ 17–23, ECF 3). The owners moved to join property manager Panphil Realty, LLC as a Third-Party Defendant, and the Court granted the Motion. (Order, ECF 13). Before this Court is Defendant Panphil Realty, LLC's ("Moving Defendant") Motion for Summary Judgment. For the reasons stated below, the motion will be denied.

### II.  Factual and Procedural Background[2]

Plaintiffs rented a home from Defendants at 1742 Cleveland Street. (Def.'s Mot. for

---

[1] Charles Irby, previously a Plaintiff, was voluntarily dismissed from this matter on March 23, 2020. (Order, ECF 80).
[2] This section is mostly adopted from the Court's previous Memorandum Re: Defendants' Motion for Summary Judgment. (ECF 67). Where applicable, citations to the record have been updated to correspond to the instant motion and response thereto.

1

Summ. J. 2, ¶ 1, ECF 82). The house had a heater in the basement that ran hot—when Plaintiffs would set the heater to 70 degrees, it would heat the house to approximately 100 degrees. (Pl.'s Resp., Ex. A 44:24–25, ECF 85-1). A Philadelphia Gas Works technician told the Plaintiffs that the heater was not installed properly, and that its piping was not properly configured. (Id. at 64:14–65:6; Ex. B 56:21–57:15).

The Plaintiffs complained about the malfunctioning heater to the property manager, Panphil Realty, on numerous occasions. (Pl.'s Resp., Ex. A 45:2–47:6; Ex. B 46:8–47:22). A repairman was dispatched, and he installed a thermostat on the first floor by the front door. (Pl.'s Resp., Ex. A 48:11–49:7; Ex. B 47:23–49:10). A wire ran from the thermostat, through the wall, and to a relay underneath the floor. A wire then went from the relay, over a partition in the basement, and to the heater. (Pl.'s Resp., Ex. A 66:1–14). The thermostat did not, however, solve the overheating problem. (Id. at Ex. A 49:8–14; Ex. B 49:25–50:13).

On the morning of January 15, 2016, a fire started at the Cleveland Street residence. (Pl.'s Resp., Ex. B 13:17–20). Plaintiff Ninia Davis was sleeping in the upstairs bedroom when she was woken up by people yelling nearby. Plaintiff Davis smelled smoke as she was jolted from her sleep, which prompted her to jump out of bed and run out of the bedroom. (Id. at Ex. A 36:18–23). As Plaintiff Davis ran downstairs and out of the house, she saw the living room filled with smoke. (Id. at 37:10–13, 40:7–12).

Meanwhile Charles Irby was upstairs taking a shower. (Def. Xheng's Mot. for Summ. J., Ex. M 13:21–14:2, ECF 32-8). After he finished, Mr. Irby heard his daughter-in-law, Ranesha Crews, run into the house frantically yelling about smoke in the living room. (Id. at 14:2–14). He looked downstairs, but there was too much smoke to see Crews. (Id. at 14:16–21). He ran out of the house, grabbing his belongings on the way out. (Id. at 15:11–16:20). As he left, his daughter,

Plaintiff Saeedah Irby, was inside and helped him take things out of the house. (Id. at 21:18–22:9). Once outside, Mr. Irby reunited with the rest of his family. (Id. at 22:13–23:6).[3]

Firefighters responded to a 9-1-1 call made by Plaintiff Ninia Davis. (Pl.'s Resp., Ex. A 57:12–18, ECF 85-1; Def. Xheng's Mot. for Summ. J., Ex. M 23:24–24:5, ECF 32-8). Once the firefighters were inside the house, Plaintiff Davis saw them try to open the walls in search of an electrical wire. (Pl.'s Resp., Ex. A 69:18–23). After the firefighters penetrated the walls, Davis saw smoke pass through the front window on the first floor. When the firefighters penetrated further into the walls, Davis saw even more smoke come from the walls. (Id. at 70:12–19). Similarly, Mr. Irby saw flames coming out of the front window where the thermostat was installed. (Def. Xheng's Mot. for Summ. J., Ex. M 25:17–26:5). People watching from outside also saw fire coming out of the wall by the thermostat. (Pl.'s Resp., Ex A 70:6–10). Davis testified that two men from Central Real Estate, the new property manager, arrived at the scene and told her that she and her family could not stay at the property while repairs were being made. (Def.'s Statement of Undisputed Facts, Ex. G 37:20–39:22, ECF 87).

The fire department filed a report, which stated that the fire was "hidden," started in the "common room, den, family room, living room," and was confined to the interior walls. The report concluded, however, that the cause of the fire was "undetermined." (Pl.'s Resp., Ex. C., ECF 85-3). Defendants Katherine and YuPing Xheng also produced a report from a private entity that

---

[3] Mr. Irby and Ms. Davis disagree about which, if any, of their children were home when the fire started. Plaintiff Davis recalls taking the children to school, (Pl.'s Resp., Ex. A 36:11–18), while Mr. Irby remembers all three of his daughters being at home, (Def. Xheng's Mot. for Summ. J., Ex. M 22:10–15). Drawing all inferences in favor of Plaintiffs as the nonmoving party, the Court presumes that Plaintiffs Amina Irby, Saeedah Irby, and Rabiyyah Irby were at home at the time of the fire. See In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015) (requiring Courts to view the record "in the light most favorable to the nonmovant, drawing reasonable inferences in its favor").

noted that there were four smokers in the house, but also could not determine the cause of the fire. (Def. Xheng's Mot. for Summ. J., Ex. J).

The fire made the Cleveland Street residence uninhabitable, and Plaintiffs had to stay at a shelter for several months. (Pl.'s Resp., Ex. A 22:5–9, 58:8–14). At some point, however, Mr. Irby returned to the house. In the basement, he saw that the heater relay was burnt out and the wood surrounding it was discolored from the fire. (Def. Xheng's Mot. for Summ. J., Ex. M 65:14–18, 67:12–19). He later returned with an electrician friend named "Chris." Chris told him that the relay caused the fire. (Id. at 69:10–25; 71:19–73:14).

Within days of the fire, Plaintiff Ninia Davis went to the hospital and was diagnosed with bronchitis and smoke inhalation. (Pl.'s Resp., Ex. A 14:20–24, Ex. G). Plaintiff Davis also testified that Plaintiff Saeedah Irby was stressed and depressed after the fire, and tried to hurt herself. (Pl.'s Resp., Ex. A 31:11–13). Over a year later, Saeedah was diagnosed with a depressive disorder and a reaction to severe stress. (Def. Xheng's Mot. for Summ. J., Ex. H at A-53, A-62).

The Plaintiffs lost numerous personal items as a result of the fire, including furniture and appliances. (Id. at Ex. M 28:22—0:18). All Plaintiffs lost clothes. (Pl.'s Resp., Ex. A 61:21–62:17). The Red Cross gave Plaintiffs $1,250, but that did not cover all their losses. (Id. at 68:21–69:4; Def. Xheng's Mot. for Summ. J., Ex. H at A-23). Plaintiff Davis also had to miss three days of work, for which she was not paid. (Pl.'s Resp., Ex. A 35:5–11).

In January 2018, Plaintiffs filed a complaint against the Xhengs alleging negligence. (ECF 3). In May 2019, Defendant Katherine Xheng moved for summary judgment. (ECF 32). Xheng argued that summary judgment should be granted because there was no evidence that Defendant had notice of a malfunctioning heater nor any evidence that the heater caused the fire. (See Mem. Op. 5–6, ECF 67). Defendant also argued that, based on this lack of evidence, Plaintiffs had not

shown any damages caused by the fire. (Id. at 6).

This Court denied that Motion because tenants generally need not give landlords notice of a property's dangerous condition to prevail on a negligence claim. (Mem. Op. 6–7). Further, the Court found that even assuming notice was required, there existed of a genuine issue of material fact given Plaintiffs' testimony that they complained to Defendants' agent, Panphil Realty, about the malfunctioning heater. (Id.) The Court found that Plaintiffs had submitted enough evidence from which a reasonable jury could conclude the malfunctioning heater caused the fire and infer that the fire started because of a faulty connection between the heater and thermostat. (Id.) Finally, the court found that Plaintiffs submitted enough evidence of damages as a result of the fire to survive summary judgment. (Id.)

In the Motion now before the Court, third-party Defendant Panphil Realty moves for summary judgment on the same facts. (ECF 82). Plaintiffs filed a Response in Opposition. (ECF 85). Moving Defendant later filed a statement of undisputed facts, (ECF 87), and Plaintiffs responded, (ECF 88).

**III.    Legal Standard**

Summary judgment is proper if the movant can establish "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is genuine—and will preclude a grant of summary judgment—if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If a fact "might affect the outcome of the suit under the governing law," the factual dispute is material and will allow the nonmovant to survive summary judgment. Id. Only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party" is a grant of summary judgment appropriate. Matsushita Elec. Indus.

5

Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). At the summary judgment stage, the district court is obligated to "review the record as a whole and in the light most favorable to the nonmovant, drawing reasonable inferences in its favor." In re Chocolate Confectionary Antitrust Litig., 801 F.3d 383, 396 (3d Cir. 2015).

It is the responsibility of the litigant seeking summary judgment to inform the district court of the basis for its motion and identify the portions of the record that demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the burden of proof on a particular issue rests with the nonmoving party at trial, the moving party's initial burden can be met by simply pointing out to the district court "that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has met its initial burden, the nonmoving party must set forth specific facts—through citation to affidavits, depositions, discovery documents, or other evidence—demonstrating the existence of a genuine triable dispute. FED. R. CIV. P. 56(c).

## IV. Parties' Arguments

### a. Moving Defendant's Arguments

Defendant Panphil argues that it is entitled to summary judgment as a matter of law for three reasons. (Def.'s Mot. for Summ. J. 13–14, ECF 82). First, because it was no longer the property management company at the time of the fire, and therefore did not owe any duty to Plaintiffs. Second, because Plaintiffs have failed to show that there was a defect at the property during the time of the fire. Third, because Plaintiffs have not demonstrated their alleged injuries were causally related to a defect at the property.

### b. Plaintiffs' Arguments

Plaintiffs oppose that Defendant Panphil is entitled to summary judgment. In response to

Defendant's arguments, Plaintiffs contend that Defendant did have a duty to Plaintiffs to keep the property safe during the period before the fire, and that it has not provided any legal support for its argument to the contrary.  (Pl.'s Resp. 10, 16–17, ECF 85).  As to the remaining elements of the negligence claim, Plaintiffs urge the Court to adopt the findings from its previous memorandum, ruling that Plaintiffs provided sufficient evidence for a jury to conclude that the malfunctioning heater caused the fire, and to conclude that Plaintiffs sustained damages as a result of the fire.  (Mem. 6–7, ECF 67).

## V. Discussion

Under Pennsylvania law, "it is axiomatic that in order to maintain a negligence action, the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage."  Fragale v. Wells Fargo Bank, N.A., No. 20-1667, 2020 WL 4815804, *4 (E.D. Pa. Aug. 19, 2020) (Quinones Alejandro, J.) (citing Wisniski v. Brown & Brown Ins. Co., 906 A.2d 571, 575–76 (Pa. Super. Ct. 2006)).

The law of negligence does not support Defendant's argument that because Central Real Estate took over as property manager shortly before the fire, that Defendant's duty to Plaintiffs was extinguished.  Defendant cites no authority to support such a theory.

To the contrary, case law supports the opposite of Defendant's argument.  Just because Defendant may not have been the property manager at the precise time of the accident does not mean it cannot be held liable for prior negligence leading up to the accident.  See Blackburn v. Prudential Lines, Inc., 454 F. Supp. 1302, 1308–09 (Lord, C.J.) (E.D. Pa. July 19, 1978) (finding that duty to keep ship deck free of oil did not shift from ship owner to ship manager based on the timing of accident or the start of manager's operations on board).  Accordingly, this Court finds

that a reasonable jury could find that Defendant Panphil owed Plaintiffs a duty to maintain the heating system in safe, working order.

Defendant Panphil's Motion does not specifically argue why it did not breach any duty it may have owed to Plaintiffs.  Nonetheless, this Court finds that Plaintiffs have provided sufficient evidence to allow for the finding that Panphil did breach such a duty.  This evidence includes Ninia Davis's deposition testimony that she complained in person at the rental office about the malfunctioning heater in the late fall/early winter of 2014 when Defendant Panphil was serving as the property manager.  (Pl.'s Resp., Ex. A 10-11, ECF 85-1).  Additionally, she testified that a repairman had been sent to the property, but that he was unable to fix the heating problems.  (Id. at 13-15).  The evidence also includes Charles Irby's testimony about making written and verbal complaints to Panphil employees.  (Pl.'s Resp., Ex. B 15–16, ECF 85-2).

As to the other elements of negligence—proximate cause and damages—this Court has already found that Plaintiffs have demonstrated that "a reasonable jury could conclude that the malfunctioning heater started the fire" and that they have "submitted enough evidence [to show] they sustained damages as a result of the fire."  (Mem. 7, ECF 67).  This analysis does not differ between the Moving Defendants, so the Court will not revisit that discussion here.

## VI.     Conclusion

For all these reasons, Defendant Panphil Realty's Motion for Summary Judgment will be denied.  An appropriate Order follows.